**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**HELEN T. PAUL,**

                              **Plaintiff,**

**v.**

                                                    **18-CV-1413**

**COMMISSIONER OF SOCIAL SECURITY,**

                              **Defendant.**

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct any and all further proceedings in this case, including entry of the final judgment. Dkt. No. 27. Helen T. Paul ("Plaintiff"), who is represented by counsel, brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for benefits. This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. Nos. 17, 21. For the following reasons, Plaintiff's motion (Dkt. No. 17) is denied, and the Commissioner's motion (Dkt. No. 21) is granted.

## BACKGROUND

On March 15, 2012, Plaintiff filed for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging disability beginning on June 5, 2009. Tr. at

17.[1] After Plaintiff's claims were denied, she filed an action in this Court challenging the Commissioner's final decision. Tr. at 546-49. This Court remanded her case for further proceedings in October of 2016. Tr. at 591-96.

Administrative Law Judge Stephen Cordonvani ("the ALJ") conducted a hearing on June 28, 2018. Tr. at 466-513. Plaintiff, who was represented by counsel, testified, as did an impartial vocational expert. Tr. at 472-502, 502-12. On August 15, 2018, the ALJ issued a decision in which he found that Plaintiff was disabled as of November 14, 2017, but not disabled before that time. Tr. at 418-35. Plaintiff filed this action challenging the Commissioner's partially-favorable decision on December 5, 2018. Dkt. No. 1.

## **LEGAL STANDARD**

**Disability Determination**

An ALJ must follow a five-step process to determine whether an individual is disabled under the Act. *See Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe," meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R.

---

[1] Citations to "Tr. __" refer to the pages of the administrative transcript, which appears at Docket No. 7.

§ 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals a Listings criterion and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If not, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

**District Court Review**

      42 U.S.C. § 405(g) authorizes a district court "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007).  Section 405(g) limits the scope of the Court's review to two inquiries:  whether the Commissioner's conclusions were based upon an erroneous legal standard, and whether the Commissioner's findings were supported by substantial evidence in the record as a whole.  *See Green-Younger v. Barnhart*, 335 F.3d 99, 105-106 (2d Cir. 2003).  Substantial evidence is "more than a mere scintilla." *Moran v. Astrue,* 569 F.3d 108, 112 (2d Cir. 2009).  "It means such *relevant* evidence as a *reasonable* mind might accept as adequate to support a conclusion."  *Id.* (emphasis added and citation omitted).  The substantial evidence standard of review is a very deferential standard, even more so than the "clearly erroneous" standard.  *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 447-48 (2d Cir. 2012) (citing *Dickinson v. Zurko,* 527 U.S. 150, 153 (1999)).

      When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)).  If there is substantial evidence for the ALJ's determination, the decision must be upheld, even if there is also substantial evidence for the Plaintiff's position.  *See Perez v. Chater,* 77 F.3d 41, 46-47 (2d Cir. 1996); *Conlin ex rel. N.T.C.B. v. Colvin*, 111 F. Supp. 3d 376, 384 (W.D.N.Y. 2015).  Likewise, where the

4

evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## DISCUSSION AND ANALYSIS

**The ALJ's Decision**

The ALJ analyzed Plaintiff's claims using the familiar five-step process described above.  *Lynch v. Astrue*, No. 07-CV-249, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps).  At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset date. Tr. at 421.  At step two, he found that Plaintiff had the following severe impairments:  borderline intellectual functioning; post-traumatic stress disorder; depressive disorder; generalized anxiety disorder; polysubstance abuse in remission; osteoarthritis of the knees and hips; and lower back disorder.  Tr. at 421.[2]  At step three, the ALJ concluded that Plaintiff's impairments did not, either individually or in combination, meet or equal the Listings, giving special consideration to Listing 1.02 (Major Dysfunction of a Joint (Due to Any Cause)), Listing 1.04 (Disorders of the Spine); Listing 12.04 (Depressive, Bipolar, and Related Disorders), Listing 12.06 (Anxiety and Obsessive-Compulsive Disorders), Listing 12.11 (Neurodevelopmental Disorders), and Listing 12.15 (Trauma and Stressor-Related Disorders).  Tr. at 421-24.

---

[2] This Court presumes the parties' familiarity with plaintiff's medical history, which is detailed at length in the papers.

Next, the ALJ found that prior to November 14, 2017, Plaintiff retained the RFC to perform light work as defined by 20 C.F.R. § 416.967(b) and § 404.1567(b), except she:  could occasionally climb ramps and stairs, kneel, crouch, crawl, bend, and balance, but never climb ladders, ropes or scaffolds; must avoid work on uneven ground or at unprotected heights; could understand, remember, and carry out simple and routine instructions and tasks; must be given work instruction orally and/or by demonstration; could work in low stress work environments reflected by simple and routine work, with no supervisory duties and no independent decision-making or strict production quotas and minimal changes in work routine and processes; and could have occasional interaction with supervisors, coworkers, and the general public.  Tr. at 424-31.  The ALJ found that beginning on November 14, 2017, Plaintiff was more restricted, with the residual functional capacity to perform only sedentary work as defined in 20 C.F.R. § 416.967(a) and § 404.1567(a), with near-identical restrictions as before November 17, 2014, except she could now only occasionally climb ramps and stairs, kneel, crouch, crawl, and bend; and can frequently balance and stoop.  Tr. at 431-32.

Continuing to the fourth step, the ALJ found that prior to November 14, 2017, Plaintiff was capable of performing her past relevant work as a fast food worker.  Tr. at 432-33.  In contrast, the ALJ concluded that, beginning on November 14, 2017, Plaintiff's RFC prevented her from being able to perform her past relevant work.  Tr. at 434.  Based on Plaintiff's age at that time (closely approaching advanced age), education (limited), and with the aforementioned RFC, the ALJ found that there are no jobs that existed in significant numbers in the national economy that Plaintiff could perform.  Tr. at 434.  Accordingly, concluded the ALJ, Plaintiff was not under a disability prior to November 14,

2017, but became disabled on that date and has continued to be disabled throughout the date of his decision.  Tr. at 434-35.

**Judgment on the Pleadings**

As noted above, the parties have cross-moved for judgment on the pleadings.  Dkt. Nos. 17, 21.  Plaintiff contends that the ALJ erred in finding that she was not disabled prior to November 14, 2017.  Dkt. No. 17-1, pp. 24-30.  The Commissioner contends that substantial evidence supports the ALJ's RFC finding, including the disability onset date.  Dkt. No. 21-1, pp. 7-12.  Having reviewed the record, this Court finds that the ALJ did not err and that the RFC was substantially supported.

**The ALJ's Disability Onset Determination**

"The onset date of disability is the first day an individual is disabled as defined in the Act and the regulations."  Titles II & XVI: Onset of Disability, SSR 83-20, 1983 WL 31249, at *1 (S.S.A. 1983).[3]  Regarding disabilities of nontraumatic origin, the ALJ must consider "the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity."  Id.  "With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling."  Id.  "Determining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available."  Id.  "In such cases, it will be

---

[3] SSR 83-20 was rescinded and replaced on October 2, 2018, by SSR 18-1p and SSR 18-2p. However, because the Commissioner's partially favorable decision was signed on August 15, 2018 (Tr. at 435), SSR 83-20 was controlling on Plaintiff's case.

necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process." *Id.*

This Court finds that substantial evidence supports the ALJ's conclusion that Plaintiff was not disabled prior to November 14, 2017, but rather, was capable of performing light work with some restrictions. The record shows that in February of 2012, Plaintiff rated herself in "excellent" general health, and reported that she was exercising, on average, 2 days a week by running, jogging, and walking. Tr. at 373, 381, 386.[4] In May of 2012, Plaintiff told her doctor that she walked approximately three to four miles to her appointment. Tr. at 256. Plaintiff told her social worker on November 11, 2013, that she continued to get regular physical activity, walking her dog twice a day. Tr. at 902. Apparently, Plaintiff also rode her bike regularly over the years leading up to her disability. Tr. at 221 (noting on May 19, 2009, that Plaintiff rode her bike two miles to her appointment); Tr. at 735 (documenting that Plaintiff was biking on May 30, 2014, when she was involved in an accident).

Regarding work history, the record does not reflect that Plaintiff stopped working because of her impairments but for other, unrelated reasons. For example, Plaintiff reported that she left one job because she "[c]ouldn't get along" with her manager who "wasn't a nice person." Tr. at 51. "His words was nasty to me," Plaintiff testified, "so I just quit." Tr. at 51. Plaintiff testified that she left another job because her husband's sister was sick and the family had to move. Tr. at 502.

---

[4] Plaintiff had two dates on her intake form, but February 2012, one of the dates, matches her initial examination with this particular provider.

8

The medical evidence also shows that Plaintiff was not compliant with treatment.  Tr. at 375 (documenting on September 21, 2012, that Plaintiff had 10 no shows and 1 cancellation for physical therapy); Tr. at 379 (documenting on November 6, 2012, that Plaintiff had 10 no shows and 2 cancellations for physical therapy).  The ALJ noted that this was likely the reason that Plaintiff made little progress towards her goals in the period prior to November 14, 2017.  Tr. at 428.  This was a permissible consideration for the ALJ in determining whether Plaintiff's symptoms were as debilitating as she alleged.  See Weed Covey v. Colvin, 96 F. Supp. 3d 14, 33 (W.D.N.Y. 2015) ("The ALJ's finding that Plaintiff's credibility was diminished by her failure to regularly attend treatment sessions was supported by ample cancellation and no-show notes in Plaintiff's medical record."); Jackson v. Barnhart, No. 06-CV0213, 2008 WL 1848624, at *11 (W.D.N.Y. Apr. 23, 2008) (finding that plaintiff's missed appointments with her counselors and failure to adhere to her medication regimen weighed against plaintiff's credibility).

Meanwhile, physical exams during the relevant period before November 14, 2017, showed that Plaintiff consistently exhibited normal gait, posture, and/or strength.  Tr. at 222 (observing on May 19, 2009, that Plaintiff had normal gait, posture, and motor behavior);  Tr. at 257 (noting on May 11, 2012, that Plaintiff had normal posture and motor behavior);  Tr. at 405 (stating on June 10, 2013, that Plaintiff ambulated without assistance, was able to sit comfortably on the exam table without difficulty or evidence of pain, had 5/5 strength in all muscle groups, equal reflexes, and a normal gait without ataxia).  This evidence was consistent with the ALJ's finding that Plaintiff was capable of light work with some further limitations.

Plaintiff argues that the May 11, 2012 opinion of consulting examiner Dr. Nikita Dave, upon which the ALJ heavily relied in forming Plaintiff's pre-November 17, 2014 RFC, supported a finding of disability.  Tr. at 262-63, 424-31.  This Court does not agree and finds that the opinion is, in fact, consistent with the ALJ's RFC of light work with restrictions.  For example, Dr. Dave found that Plaintiff had a full range of motion in her knees without instability, effusion, ankylosis, atrophy, or neurological effects; full range of motion of her shoulders, elbows, forearms, and wrists bilaterally; full range of motion of her knees and ankles bilaterally; stable joints; 5/5 strength in the upper and lower extremities; 5/5 grip strength bilaterally; and intact finger dexterity.  Tr. at 263.  Although Dr. Dave concluded that Plaintiff would have moderate limitations for prolonged sitting, standing, bending or twisting through the lumbar spine, and lifting, carrying, pushing and pulling of greater than lightly weighted objects, and repetitive climbing and squatting (Tr. at 263), these limitations were accommodated by the designation of light work with numerous restrictions in the RFC (Tr. at 424).

By the time that Dr. Michael Rosenberg examined her on November 14, 2017, Plaintiff's condition had worsened to the point that she was only capable of sedentary work with restrictions.  Tr. at 431-32; 814-17.  While Plaintiff had an antalgic gait in 2012, she had a slow, deliberate gait with a limp favoring the left leg in 2017.  Tr. at 262, 814.  Where Plaintiff could walk on heels and toes briefly while "holding on" in 2012, she could not do this in 2017.  *Id.*  Plaintiff used no assistive devices in 2012, but walked with a cane (which Dr. Rosenberg determined to be medically necessary) in 2017.  Tr. at 262, 814.  In 2012, Plaintiff had full flexion, extension, and rotation in her neck (cervical spine),

but in 2017, she had pain with range of motion in her neck and lower back. Tr. at 262, 815.

Compared with 2012, when she had full range of motion in her knees and ankles, Plaintiff's range of motion was limited in her right knee in 2017. Tr. at 263; 815. In 2012, Plaintiff had full strength in her upper and lower extremities. Tr. at 263. By 2017, her strength in her lower extremities was reduced to 4+/5. Tr. at 815. While Plaintiff had only moderate limitations in bending or twisting in 2012, she had severe restrictions in twisting or turning her cervical spine in 2017. Tr. at 263, 816. Among the other restrictions Plaintiff had in 2017, that she did not have in 2012: she could only lift up to 10 pounds; she had only occasional use of her left foot; and she could never climb ladders or scaffolds. Tr. at 816, 818, 820-21.

The comparison of Dr. Dave's and Dr. Rosenberg's opinions makes clear that Plaintiff was significantly more restricted in 2017 than she was in 2012. Dr. Rosenberg's examination supported the ALJ's finding that Plaintiff was limited to sedentary work with numerous restrictions as of November 14, 2017. Dr. Dave's earlier opinion did not and would not support such a restricted finding. Plaintiff argues that her case should be remanded for calculation of benefits "because the record contained numerous [pre-2017] medical opinions that indicated that Plaintiff was disabled even at light work." Dkt. No. 17-1, p. 29. However, the ALJ reasonably discounted all of the opinions—other than Dr. Dave's—that were written before November 14, 2017. Tr. at 429-30. And as Defendant points out, "Plaintiff does not even attempt to show that the ALJ's evaluation of these opinions was incorrect." Dkt. No. 21-1, p. 10 (citing *Poupore v. Astrue*, 566 F.3d

303, 306 (2d Cir. 2009) for the principle that issues that are not sufficiently argued in the brief are considered waived and will not be considered on appeal).

Plaintiff also argues that her case must be remanded for calculation of benefits because the vocational expert testified that if she needed to use a cane before November 13, 2017, she would have been unable to perform jobs at the light exertional level.  Dkt. No. 17-1, p. 29; Tr. at 511-12.  While this is true, it does not compel remand because, according to the evidence cited by Plaintiff, the first time a doctor deemed that a cane was medically necessary for Plaintiff was on November 14, 2017.  Dkt. No. 17-1, p. 12. Tr. at 814.  The law is well established that a vocational expert's testimony about limitations that were not supported by the evidence cannot show that Plaintiff was more limited than the ALJ found.  *Priel v. Astrue*, 453 F. App'x 84, 87-88 (2d Cir. 2011) (holding that "the ALJ properly declined to include in his hypothetical question symptoms and limitations that he had reasonably rejected"); *Dumas v. Schweiker*, 712 F.2d 1545, 1554 (2d Cir. 1983) (citing decisions which criticized hypotheticals given to vocational experts, asking them to assume a particular physical capability "where there was no evidence to support the assumption underlying the hypothetical").

Based on the foregoing, this Court finds that the ALJ did not err in finding that Plaintiff was disabled as of November 14, 2017, but not before.  Plaintiff clearly disagrees.  However, the substantial evidence standard is so deferential that "there could be two contrary rulings on the same record and both may be affirmed as supported by substantial evidence."  *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 127 (2d Cir. 2012).  That is, "once an ALJ finds the facts, [a reviewing court] can reject those facts only if a reasonable

factfinder ***would have to conclude otherwise***." Brault, 683 F.3d at 448 (emphasis added). This case does not present such a situation. For the foregoing reasons, this Court finds that the ALJ's decision is free from legal error and is supported by substantial evidence.

## CONCLUSION

For the reasons stated herein, Plaintiff's motion for judgment on the pleadings (Dkt. No. 17) is hereby DENIED, and the Commissioner's motion for Judgment on the pleadings (Dkt. No. 21) is GRANTED. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

DATED:    Buffalo, New York
          June 29, 2020

*s/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**